## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NICOLE RUNKLE,** | : | **CIVIL ACTION NO. 1:13-CV-1020** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEPARTMENT OF LABOR AND** | : | |
| **INDUSTRY, COMMONWEALTH** | : | |
| **OF PENNSYLVANIA,** | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

Presently before the court in the above-captioned matter is the motion

(Doc. 11) for summary judgment filed by the Commonwealth of Pennsylvania

Department of Labor and Industry ("Department"). The Department seeks

summary judgment with respect to all claims asserted by Nicole Runkle ("Runkle"),

a former employee, who alleges that the Department failed to accommodate her

disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. §§

951-963. For the reasons that follow, the court will grant the Department's motion.

## I.   Standard of Review

Through summary adjudication the court may dispose of those claims that

do not present a "genuine issue as to any material fact" and for which a jury trial

would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The

burden of proof is upon the non-moving party to come forth with "affirmative

evidence, beyond the allegations of the pleadings," in support of its right to relief.

Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## II.    **Statement of Material Facts**[1]

The dispute *sub judice* arises from Runkle's former employment[2] as an Unemployment Compensation Claim Intermittent Intake Interviewer ("UCIII") with the Department.  Runkle interviewed for the UCIII position on December 29, 2011.  (Doc. 14 ¶ 3).  During her interview, Runkle was notified that the position, located in the Harrisburg Overflow Call Center in Harrisburg, Pennsylvania, may require working shifts on evenings and weekends.  (Id. ¶¶ 5-6; also Doc. 14-1, Ex. 2 (Runkle's signed statement acknowledging that "this position may also require me to work evenings, Saturday's and Sunday's . . . [and] that I will be available to work these hours if so assigned")).  Runkle notified the interviewer that she is legally blind, resulting in restrictions in her ability to drive, and would require reasonable

---

[1] To the extent facts are undisputed or supported by record evidence, the court cites directly to the parties' statements of material facts.

[2] Although the parties submissions are unclear, Runkle apparently left her employment with the Department for reasons immaterial to the instant litigation.

accommodations.  (Doc. 14 ¶ 7; <u>also</u> Doc. 16-3).  Runkle was not advised during the interview that she would be assigned to work a 1:00 p.m. to 9:00 p.m. shift.  (Doc. 17 ¶¶ 4, 9).

Runkle's appointment to the UCIII position began on February 13, 2012. (Doc. 14 ¶ 9; <u>see</u> Doc. 17 ¶ 9).  Runkle emphasizes that her appointment letter did not assign or limit her to any particular shift.  (Doc. 17 ¶ 9).  The class to which Runkle was appointed is represented by the Pennsylvania Social Services Union ("PSSU"), and Runkle became a member of the union by virtue of her employment with the Department.  (Doc. 14 ¶ 11; Doc. 17 ¶ 11).  Runkle was assigned to work the 1:00 p.m. to 9:00 p.m. shift.  (Doc. 1-2 ¶ 13 ("Defendants placed [Runkle] on the night shift (1 pm – 9 pm).")).  All new UCIII hires without union seniority start on the 1:00 p.m. to 9:00 p.m. shift.  (Doc. 14 ¶ 13).

On February 22, 2012, Runkle sought a change in her schedule as an accommodation for her visual impairment: she advised that she is unable to drive to work because she is legally blind and does not have a driver's license, and that there is no public transportation between her home in Shamokin, Pennsylvania, and the call center in Harrisburg, Pennsylvania.  (Doc. 14 ¶ 14; <u>see</u> <u>also</u> Doc. 16-1 (email requesting shift change)).  Runkle requested that she be assigned to the day shift so that she could commute to work with Gina Runkle, also employed by the Department, and another individual.  (Doc. 14 ¶ 14; Doc. 16-1).  Runkle submitted a formal request for accommodation form on February 24, 2012, wherein she restated her request for a day shift assignment and also requested large print materials or a

3

closed-circuit television ("CCTV") so that she could "see printed materials better." (Doc. 14 ¶ 15; <u>see also</u> Doc. 16-2 (formal request for accommodation)).

Wendy Peters ("Peters"), the Site Administrator for the Department's Harrisburg Overflow Call Center, signed the formal request on February 24, 2012. (<u>See</u> Doc. 16-2). Peters made the following handwritten notation in the supervisor comments section of the form: "During the interview, we were made aware that Nicole has a visual impairment. At no time did she indicate that she could not work the required hours. Our shifts are based on seniority. This would become a union contract violation." (Doc. 16-2). The "determination made" section of the form is blank. (See Doc. 14-3, Ex. 1 at 2). Runkle construes Peters' comments as a "flat out" denial of her request. (Doc. 17 ¶ 16). Peters states that she simply forwarded Runkle's form to the Bureau of Human Resources for further processing. (Doc. 14 ¶ 17). Rhonda Brown ("Brown"), the Department's Disability Services Coordinator, states that she received Runkle's request and initiated processing. (Doc. 14 ¶ 18).[3]

On March 27, 2012, Brown notified Runkle's counsel that her request for large print materials and a CCTV had been approved. (Id. ¶ 20). According to Brown, Runkle's shift change request took additional time to process because of union seniority considerations. (<u>Id.</u> ¶ 21). Runkle does not cite evidence to counter

---

[3] Runkle denies this fact but cites no evidence to refute it. Instead, Runkle contends that the only reason that Brown became involved in the process at all is because Runkle hired counsel and filed a second request. (<u>See</u> Doc. 17 ¶ 18 (citing letter from Runkle's counsel to Department Operations Manager, Charlie Law, reaffirming Runkle's request for accommodation)).

Brown's position, but instead contends that it was the Department, not the union, which ultimately had authority over the shift change decision. (<u>See</u> Doc. 17 ¶ 21 (citing Runkle's affidavit as support)). According to Brown, day shift positions are preference positions which are awarded based upon seniority, as defined by the collective bargaining agreement. (<u>Id.</u> ¶ 22; <u>see</u> <u>also</u> Doc. 14-1, Ex. 3 at 73-75 (PSSU collective bargaining agreement setting forth seniority provisions)). In order to facilitate the shift change for Runkle, a non-senior union member, "negotiations were necessary between the union, Runkle's supervisor, and attorneys with the [Department's] Office of Chief Counsel." (Doc. 14 ¶ 25).

Runkle admits that she does not know whether these negotiations occurred. (<u>See</u> Doc. 16-8 ¶ 18 ("N. Runkle Aff.") ("I am not aware that the union was involved in any negotiations . . . and believe I would know since it involves me.")). Runkle's primary witness, Gina Runkle, similarly concedes a lack of knowledge with respect to whether union negotiations took place. (Doc. 16-7 ¶ 9 ("G. Runkle Aff.") ("I am not aware that the union was involved in any negotiations on Nicole's behalf.")). Gina Runkle states that she has been employed with the Department for more than two years and has "personally witnessed switches in shifts that did not require union approval." (Doc. 17 ¶ 13; G. Runkle Aff. ¶ 3). Gina Runkle also states that she has twice requested a shift change for purposes of a carpool and that the requests were granted without union involvement. (<u>See</u> G. Runkle Aff. ¶¶ 4-5).

The Department's management ultimately decided after "discussion and negotiaton with the union" that Runkle could be transferred to day shift. (Doc. 14

¶ 27).  Brown issued a letter to Runkle on May 16, 2012, advising that her request

had been approved, and on May 17, 2012, Runkle's schedule was changed to day

shift.  (Id. ¶ 28).

Runkle filed a single-count complaint in the Dauphin County Court of

Common Pleas on March 20, 2013, before the Department granted her requested

accommodations.  Notwithstanding Runkle's shift change, Runkle alleges that the

Department failed to accommodate her disability in violation of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania

Human Relations Act ("PHRA"), 43 PA. STAT. §§ 951-963.  (Doc. 1-2 at 8-11).  The

Department timely removed the action to this court on April 18, 2013, (Doc. 1), and

answered the complaint on May 3, 2013.  (Doc. 4).  The Department amended its

answer on May 22, 2013.  (Doc. 8).  After a period of discovery, the Department filed

a motion pursuant to Federal Rule of Civil Procedure 56(a).  The motion is fully

briefed (Docs. 14-16) and ripe for disposition.

## III.   Discussion

Runkle asserts a claim for failure to accommodate her disability in violation

of the ADA.  Runkle asserts, first, that the Department unreasonably denied her

initial request for an accommodation without identifying an undue hardship and,

second, that the Department unreasonably delayed in finally granting her second

request.  (Doc. 1-2 ¶ 16).  The Department responds that Runkle's request was

ultimately granted, mooting both of her ADA claims, and that any delay in granting

said request was reasonable and necessary given collective bargaining restrictions.

(Doc. 15 at 8-10).  The parties' competing statements of fact notwithstanding, the court concludes that the Department is entitled to summary judgment as a matter of law on Runkle's ADA claim.

The ADA prohibits employers from discriminating against a qualified individual  with a disability on the basis of that individual's mental or physical impairments.  See 42 U.S.C. § 12112(a); see also Hohider v. UPS, 574 F.3d 169, 186 (3d Cir. 2009).  To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) that she is disabled within the meaning of the ADA; (2) that she is otherwise able to perform the essential functions of the job, with or without a reasonable accommodation by the employer; and (3) she has suffered an adverse employment decision as a result of disability discrimination.  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).  The parties appear to agree for purposes of Rule 56 that Runkle is a "qualified individual" with a "disability" as defined by the ADA.  (See Doc. 14 ¶ 8; Doc. 17 ¶ 8; see also Doc. 15 at 6-10 (brief in support of motion failing to raise qualified individual or disability challenges)).  The court solely queries whether the Department caused Runkle to suffer an "adverse employment decision" for purposes of ADA liability.  See Taylor, 184 F.3d at 306.

Adverse employment decisions under the ADA contemplate more than termination of or failure to hire a qualified individual on the basis of his or her disability.  See 42 U.S.C. § 12112(b)(1)-(7).  Adverse employment decisions also include an employer's failure or refusal to reasonably accommodate an individual's disability.  See id. § 12112(b)(5)(A) (providing that "the term 'discriminate against a

7

qualified individual on the basis of disability' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ."); see also Taylor, 184 F.3d at 306 ("Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations  for a plaintiff's disabilities."). Such a failure to accommodate violates the ADA unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

Runkle couches her claim as one for failure to accommodate her disability by rejecting Runkle's request for a shift change "flat out" and revisiting it only upon her counsel's involvement in the case. (Doc. 16 at 3-4). Runkle's own admissions, however, reveal that the Department did not deny her requested accommodation:

> It is admitted that it took almost three (3) months from the original request to grant the zero cost accommodation. Moreover, [Runkle's] original request for accommodation was denied on or about February 24, 2012. It was only after a lawyer became involved in representing [Runkle] and the filing of the instant lawsuit, that [the Department] finally granted the zero cost accommodation . . . .

(Doc. 17 ¶ 28). Although Runkle alleges that her request was summarily denied on February 24, 2012, and not revisited until counsel became involved, (id.), Runkle

cites no evidence demonstrating that the request was actually denied.[4]  Rather,

Runkle admits that her request was granted in part on March 27, 2012, when Brown

notified her counsel that the request for large print materials and a CCTV had been

approved.  (See Doc. 14 ¶ 20).  Runkle also admits that her request for a shift change

was granted on May 16, 2012.  (See Doc. 14 ¶ 28; Doc. 17 ¶ 28).  At its core, Runkle's

claim is not that the Department denied her requested accommodation but rather

that the Department unreasonably delayed in granting that request.  (See Doc. 17

¶ 28 (admitting that request was ultimately granted but emphasizing three month

delay)).

       The ADA's reasonable accommodation requirement carries a procedural

component which requires the employer to engage in "reasonable efforts to assist

the employee and to communicate with the employee in good faith." Mengine v.

Runyon, 114 F.3d 415, 416 (3d Cir. 1997).  Courts refer to this requirement as the

"duty to engage in the interactive process."  Williams v. Phila. Hous. Auth. Police

Dept., 380 F.3d 751, 761 (3d Cir. 2004).  In order to hold an employer liable for a

breakdown in the mandatory interactive process, a plaintiff must show: (1) the

employer knew about her disability; (2) she requested an accommodation for her

---

       [4] In fact, the "determination made" portion of the request form dated
February 24, 2012, is blank.  (Doc. 14-3, Ex. 1 at 2).  This is the only evidence that
Runkle cites in support of her contention that the Department "flat out denied" her
request.  The remainder of the evidence squarely refutes Runkle's position that the
request was never taken under consideration and belies her assertion that she was
never advised of the status of her request.  (E.g., Doc. 16, Ex. 5 (email memorializing
phone conversation and advising: "Please be assured that our office is actively
processing your request for accommodation.")).

disability; (3) the employer did not make a good faith effort to assist her in seeking accommodations; and (4) she could have been reasonably accommodated but for his employer's lack of good faith.  See Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010); Conneen v. MBNA Am. Bank, 334 F.3d 318, 330-31 (3d Cir. 2003).

Runkle contends that the Department inexplicably delayed for nearly three months in granting her request, thus resulting in a failure to reasonably engage in the interactive process.  (See Doc. 16 at 6 ("Defendants should have provided the 5/16/12 accommodation on 3/15/12, or even earlier in response to [Runkle's] original 2/22/12 request.")).  Runkle cites no other perceived deficiency with the interactive process in her papers.  (See id.).  The Department argues that Runkle's request was granted, mooting her ADA claim, and that no separate claim lies for deficiencies in the interactive process when the requested accommodation is ultimately provided. (Doc. 15 at 8-10).  The Department adds that, even if the court were to establish a separate cause of action for failures in the interactive process, legitimate collective bargaining concerns reasonably precluded an earlier resolution of Runkle's request. (See id. at 9-10).

Fatal to Runkle's claim is the fact that a failure to engage in the interactive process is not an independent cause of action when the employer has ultimately accommodated the employee.  The Third Circuit Court of Appeals and numerous district courts within the Circuit have held that failure to engage in the interactive process is not an independent cause of action, but merely a component part of the court's reasonable accommodation analysis.  See Whelan v. Teledyne Metalworking

10

Prods., 226 F. App'x 141, 147 (3d Cir. 2007) (not precedential)[5] (affirming jury verdict

and concluding that court did not err in instructing jury that it could not find a

failure  to engage in the interactive process "unless the employee has proven a

failure to accommodate"); Hudson v. Guardsmark, LLC, No. 4:12-cv-1255, 2013 U.S.

Dist. LEXIS 166825, at *30 (M.D. Pa. Nov. 22, 2013) ("As a threshold matter, to the

extent the plaintiff premises an ADA claim on the quality of the interactive process

which led to accommodation of his transfer and time-off requests, this claim fails

since the 'failure to participate in the interactive process is not a ground for liability.

. . .'"); Bisker v. GGS Info. Servs., Inc., No. 1:CV-07-1465, 2010 U.S. Dist. LEXIS

53879, at *7 n.3 (M.D. Pa. June 2, 2010) (citing Whelan and holding that "failure to

participate in the interactive process is not a ground for liability unless [the

plaintiff] proves a failure to accommodate").

---

[5] The court acknowledges that Whelan is a non-precedential decision but is
nonetheless persuaded by the panel's *ratio decidendi* and the policy considerations
underlying the same.

Runkle has failed to direct the court to any contrary authority.[6]  In fact,

Runkle's sole response to <u>Whelan</u> and its progeny is that the plaintiff in <u>Whelan</u>

received a jury trial, mandating a jury trial in this case as well.  (Doc. 16 at 7 ("[T]he

interestingly [sic] thing about the <u>Whelan</u> case is that Whelan got a jury trial and

unfortunately, the jury found against him. . . . Ironically, instead of supporting [the

Department's] position, <u>Whelan</u> actually supports [Runkle's] case since she should

get a jury trial just like Whelan did.")).  Nothing in the <u>Whelan</u> decision, however,

expanded or modified the summary judgment standard in the manner Runkle's

---

[6] The court is aware of one district court decision articulating a modified approach and concluding that although the ADA does not create independent liability on the basis of failure to accommodate, liability may exist, based upon the circumstances of the case, "where an accommodation was ultimately achieved, however, a genuine issue of material fact exists regarding the reasonableness of the accommodation." <u>O'Dell v. Dep't of Public Welfare</u>, No. 3:02-130J, 2004 U.S. Dist. LEXIS 23585, at *32 & n.8 (W.D. Pa. Nov. 10, 2004).  That court clarified, however, that it "*does not* set forth the proposition that independent liability exists based solely on an employer's failure to engage in good faith in the interactive process." <u>Id.</u> (emphasis added).  Ultimately, the <u>O'Dell</u> court concluded that the employer's unjustified delays, which precluded the employee's return to work for over a year, raised genuine issues as to the reasonableness of the ultimate accommodation granted to the employee.  <u>Id.</u> at *25-26, *32 n.8 (holding that this "evidence of unreasonable delay or postponement in returning an employee to work may provide sufficient evidence that an employer did not engage in good faith in the interactive process . . . causing an unreasonable accommodation for the employee").  The matter *sub judice* is immediately distinguishable from the exceptional circumstances presented in <u>O'Dell</u>.  The Department here delayed less than three months in granting the proposed accommodation, in contrast to <u>O'Dell</u>'s sixteen (16) month waiting period.  Moreover, the Department has offered a legitimate and unrefuted explanation for its brief delay.  Further, the accommodation Runkle received is the exact accommodation requested, straining any finding that the same is unreasonable.  The court concludes that <u>O'Dell</u> is factually inapposite.

proposal suggests.[7]  In the case *sub judice*, Runkle concedes that she received her

requested accommodation.  Consequently, Runkle has failed to establish the

existence of a genuine dispute of material fact, and the Department is entitled to

summary judgment in its favor as to Runkle's ADA claim.  See Anderson, 477 U.S.

at 250 (holding that "there is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party").

Even if the court were to conclude that perceived deficiencies in the

interactive process support an independent cause of action, Runkle's blanket

allegations that the Department's delay was unreasonable are entirely unfounded.

For example, Runkle argues that the Department never engaged in negotiations

with the union, but as support cites only her own averment that she did not know

whether negotiations occurred.  (See Doc. 17 ¶ 21 (citing N. Runkle Aff. ¶ 17 ("I am

not aware that the union was involved in any negotiations on my behalf; and believe

I would know since it involves me."); G. Runkle Aff. ¶ 9 ("I am not aware that the

union was involved in any negotiations on Nicole's behalf.")).  This conceded lack

of knowledge is insufficient to disprove the Department's stated and supported

explanation for its delay in granting Runkle's accommodation.  See Fed. R. Civ. P.

56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be

*made on personal knowledge*, set out *facts* that would be admissible in evidence, and

---

[7] Although the Third Circuit's decision in Whelan is silent as to pretrial
motion practice before the district court, presumably the matter involved genuine
disputes of material fact requiring a jury's resolution.

show that the affiant . . . is competent to testify on the matters stated." (emphasis added)); Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985) (requiring affiant to "set forth facts, rather than opinions or conclusions"); Summy-Long v. Pa. State Univ., No. 1:06-cv-1117, 2009 U.S. Dist. LEXIS 24851, at *2 (M.D. Pa. Mar. 26, 2009) ("Statements of belief, no matter how sincere, are properly subject to a motion to strike because they do not meet the personal knowledge requirement.")).  In other words, Runkle's "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."  Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009).  Runkle concedes a complete lack of knowledge with respect to the dispute central to her claim.  Her theory of the case thus lacks both legal and factual support.

The court's findings are also fatal to Runkle's PHRA claim.  Pennsylvania courts assess PHRA claims in accordance with their federal counterparts.  Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).  The Third Circuit routinely applies federal law to disability discrimination claims under the PHRA.  See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (observing that ADA and PHRA are "basically the same").  Consequently, the above disposition of Runkle's ADA claim applies with equal force to Runkle's PHRA claim.  The court will enter judgment in the Department's favor with respect to both claims.

**V.**     **Conclusion**

For all of the foregoing reasons, the Department's motion (Doc. 11) for

summary judgment will be granted in its entirety.  An appropriate order will issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        June 11, 2014